FREJKA PLLC
Elise S. Frejka
135 East 57th Street – 6th Floor
New York, New York 10022
(212) 641-0800

*Hearing Date: February 21, 2019 at 11:00 AM*
*Objections Due: February 14, 2018*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
                             :

In re:                         :    Chapter 11 Case
                             :

PARK OVERLOOK, LLC, *et al.*,     :   Case No.: 16-11354 (SCC)
                             :

         Debtors.          :   (Jointly Administered)
                             :
-----------------------------------------------------X

**GLENN ZINSMEYER'S (I) OBJECTION TO FINAL APPLICATIONS
OF THE LAW OFFICES OF ADRIENNE WOODS, P.C., AS ATTORNEYS
FOR THE DEBTORS FOR ALLOWANCE OF COMPENSATION AND
REIMBURSEMENT OF EXPENSES PURSUANT TO SECTIONS 330, AND 331 OF THE
BANKRUPTCY CODE; (II) JOINDER IN OBJECTION OF UNITED STATES
TRUSTEE TO FIRST AND FINAL APPLICATIONS OF COUNSEL AND FINANCIAL
ADVISOR TO THE DEBTORS (ECF NO.: 104); AND (III) JOINDER
IN LIMITED OBJECTION OF CHAPTER 7 TRUSTEE TO FIRST AND FINAL
APPLICATION FOR COMPENSATION OF ADRIENNE WOODS, P.C.
AND VERNON CONSULTING INC. AND RESERVATION OF RIGHTS (ECF NO.: 102)**

Glenn Zinsmeyer ("Zinsmeyer"), by his counsel Frejka PLLC, files this objection (the

"Objection") with respect to the final applications (the "Final Applications") of the Law Offices

of Adrienne Woods, P.C. ("Woods") for allowance of compensation and reimbursement of

expenses as counsel for Park Overlook, LLC (the "Park Overlook") and Dawn Hotel of NY,

LLC (the "Dawn," and together with the Park Overlook, the "Debtors") and joins the (i)

Objection of the United States Trustee to First and Final Applications of Counsel and Financial

Advisor to the Debtors (ECF No.: 104), and (ii) Limited Objection of Chapter 7 trustee to First

and Final Applications for Compensation of Adrienne Woods, P.C. and Vernon Consulting Inc.

and Reservation of Rights (ECF No.: 102) respectfully represents as follows:

<u>Background</u>

1.        Zinsmeyer is a fifty (50%) interest holder of the Dawn and a fifty (50%) percent

interest holder of the Park through a limited liability company LBSZ Management, LLC and as

such has standing to file this Objection.

2.        On May 12, 2016 (the "<u>Petition Date</u>"), each of the Debtors filed voluntary

petitions for relief under chapter 11 of title 11, United States Code, as amended (the "<u>Bankruptcy</u>

<u>Code</u>").

3.        The Debtor's cases are being jointly administered and have not been substantively

consolidated.  <u>See</u> Order (A) Authorizing Joint Administration of the Debtors' Chapter 11 Cases;

(B) Authorizing a Consolidated Mailing Matrix; and (C) Granting Related Relief (ECF No.: 28).

4.        On the Petition Date, the Debtors entered into an engagement letter (the

"<u>Engagement Letter</u>") with Woods wherein Woods agreed to provide legal services to the

Debtors in connection with the bankruptcy cases.  A copy of the Engagement Letter is attached

hereto as <u>Exhibit A</u>.  The Engagement Letter provides:

> There is always the possibility that we may be asked by
> other persons, present, past or future, to act on their behalf
> on matters that are not specifically related to our
> representation of the [Debtors].  You agree that we will be
> under no disability in providing such representation
> notwithstanding the fact that these other clients may have
> interests adverse to the [Debtors'] interests provided our
> involvement is unrelated to the subject matter of our
> retention by you in these Chapter 11 Cases.

5.        By Order dated August 18, 2016, each of the Debtors was authorized to retain and

employ Woods as counsel for the Debtors.  <u>See</u> Order Authorizing the Retention of The Law

Offices of Adrienne Woods, P.C. as Attorneys for the Debtors and Debtors-in-Possession *nunc*

*pro tunc*, from May 12, 2016 (ECF No.: 30).

2

6.      Pursuant to the Stipulation and Order Resolving Disputes and Directing the Appointment of Chapter 11 Trustee (ECF No.: 40), the United States Trustee appointed Salvatore LaMonica (the "Trustee") as the chapter 11 trustee of the Debtors' estates on September 12, 2016.  See Notice of Appointment of Chapter 11 Trustee (ECF No.: 44).

7.      At a hearing held before this Court on October 5, 2016, the Trustee made an oral motion to convert the Debtors' cases to cases under chapter 7 of the Bankruptcy Code and an Order Converting Cases to Chapter 7 was entered on November 9, 2016.  See Transcript of Hearing held on October 5, 2016 (ECF No.: 61); Order Converting Cases to Chapter 7 (ECF No.: 57).  Thereafter, the Trustee was appointed the chapter 7 trustee of each of the Debtors' cases. See Appointment of Interim Trustee and Trustee and Designation of Required Bond (ECF Nos.: 58, 59).

8.      While the Debtors were chapter 11 debtors under the direction of a chapter 11 trustee and during a period of time when Woods was representing the Debtors, Woods represented to the Court that she was "now representing Mr. Duggins (ph.) and Mr. Dunn (ph.)". See Transcript of Hearing held on October 5, 2016 (ECF No.: 61) at p. 9 and attached hereto as Exhibit B.

9.      On May 15, 2017, Woods filed the Final Applications:

a.      In the Final Application with respect to the Dawn (the "Dawn Final Application"), Woods requests that this Court award Woods an allowance of compensation in the amount of $22,680.00 and reimbursement of actual and necessary expenses in the amount of $2,279.59.  See Final Application of the Law Offices of Adrienne Woods, P.C. as Attorneys for the Debtors for Allowance of Compensation and Reimbursement of Expenses Pursuant to Sections 330 and 331 of the Bankruptcy Code (ECF No.: 81).

b.      In the Final Application with respect to the Park Overlook (the "Park Overlook Final Application"), Woods requests that this Court award Woods an allowance of compensation in the amount of $25,880.00 and reimbursement of actual and necessary expenses in the amount of

3

$2,330.44.  See Final Application of the Law Offices of Adrienne Woods, P.C. as Attorneys for the Debtors for Allowance of Compensation and Reimbursement of Expenses Pursuant to Sections 330 and 331 of the Bankruptcy Code (ECF No.: 82).

10.     Attached to each of the Final Applications was the Certification of Adrienne

Wood certifying that the Final Applications, to the best of her knowledge, information and

belief, comply with the Amended Guidelines for Fees and Disbursements for Professionals in

Southern District of New York Bankruptcy Cases (the "Amended Guidelines") and the

Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed

Under 11 U.S.C. § 330 promulgated by the Executive Office of the United States Trustee (the

"UST Guidelines".  See Final Application of the Law Offices of Adrienne Woods, P.C. as

Attorneys for the Debtors for Allowance of Compensation and Reimbursement of Expenses

Pursuant to Sections 330 and 331 of the Bankruptcy Code (ECF No.: 81); Final Application of

the Law Offices of Adrienne Woods, P.C. as Attorneys for the Debtors for Allowance of

Compensation and Reimbursement of Expenses Pursuant to Sections 330 and 331 of the

Bankruptcy Code (ECF No.: 82).

<u>Objection to Final Applications</u>

11.     The UST Guidelines are intended to provide professionals with clear and concise

procedures for applications for compensation and reimbursement of expenses.  As relevant to

this Objection, the UST Guidelines require:

Time entries should be kept contemporaneously with the services rendered in time periods of tenths of an hour. Services should be noted in detail, with each service showing a separate time entry and not combined or "lumped" together; however, tasks performed on a project which total a de minimis amount of time can be combined or lumped together if they do not exceed 0.5 hours on a daily aggregate.  Time entries for telephone calls, letters, and other communications should give sufficient detail to identify the parties to and the nature of the communication.  Time entries for court hearings and conferences should identify the subject of the hearing

or conference.  If more than one professional from the applicant
firm attends a hearing or conference, the applicant should explain
the need for multiple attendees.

UST Guidelines at c(vii).

12.    Contrary to Wood's certification, the time entries that make up the Final

Applications do not comply with the UST Guidelines even under an expansive reading of the

Guidelines.  Virtually every time entry is lumped and 76.47% of the entries are billed identically

to both estates.  The 204 total time entries are allocated between the estates as follows:



See Exhibit C.

13.    More specifically, there are 78 identical time entries billed to both the Dawn

estate and the Park Overlook estate.  These entries in the aggregate account for 76.47% of the

total hours billed by Woods to the Debtors' estates and have a value of $36,480.00.  Moreover,

these 78 identical time entries do not contain the specificity required by the UST Guidelines as

the various activities are not described with a level of detail that would allow the Court to

ascertain the benefit conferred.  Each entry is missing the requisite detail to allow the Court to

understand the professional activity undertaken and how it benefitted a particular Debtor rather than assuming that it applied equally to both Debtors.  It is highly unlikely that each activity benefitted both Debtors every single time, or that each entry in fact took an evenly divisible amount of time.  However, it is impossible to evaluate this hypothesis because the time within most of these entries are combined or "lumped".  As such, compensation to Woods is not warranted.

14.    The Final Applications further fail to allocate non-working travel separately or to bill such time in conformity with the UST Guidelines.  Any award of compensation related to non-working travel should be appropriately reduced by fifty (50%) percent.

15.    Woods billed time to the Park Overlook estate on May 17, 2016 that obviously benefitted only the Dawn estate and no compensation is appropriate for this time.

16.    In light of the deficiencies associated with the time entries contained in the Final Applications, this Court should deny compensation in its entirety as it is impossible to ascertain whether the overlapping time entries actually conferred a benefit to the Debtors' estates or represent duplicative billing.

17.    Finally, Woods has and continues to have a fiduciary duty to the Debtors.  Woods agreed to represent the Debtors only.  This duty was not obviated merely because a chapter 11 trustee was appointed.  Wood's representation to the Court that she now represents certain of the principals of the Debtors is a conflict of interest and precludes compensation from the Debtors' estates.  Accordingly, on this basis, the Final Applications should be denied.

WHEREFORE, Zinsmeyer respectfully requests that this Court deny the Final

Applications and grant such other and further relief as this Court may deem just and proper.

Dated:  New York, New York
        February 14, 2018

                                    FREJKA PLLC


                                    /s/ Elise S. Frejka
                                    Elise S. Frejka
                                    135 East 57th Street – 6th Floor
                                    New York, New York 10022
                                    Telephone: (212) 641-0800
                                    Facsimile: (212) 641-0820
                                    Email: efrejka@frejka.com

# **EXHIBIT A**

# THE LAW OFFICES OF ADRIENNE WOODS, P.C.

459 Columbus Avenue, #314
New York, New York 10024
Telephone: (212) 634-4459
Facsimile: (212) 634-4462

Adrienne Woods, Esq.                                     Adrienne@woodslawpc.com

## *PERSONAL AND CONFIDENTIAL*

## *PRIVILEGED AND CONFIDENTIAL*

May 12, 2016

Mr. Gordon H. Duggins
Member
Park Overlook LLC
Dawn Hotel of N.Y., LLC
PO Box 609
Colfax, North Carolina 27235

**Re:    Engagement of Services/Chapter 11 Bankruptcy Case**

Dear Gordon:

We are pleased to confirm the retention of The Law Offices of Adrienne Woods, P.C. ("Woods") and the Law Offices of Gabriel Del Virginia ("Del Virginia", with Woods, the "Firms") as co-counsel to represent Park Overlook LLC and Dawn Hotel of N.Y., LLC (the "Companies") in connection with Chapter 11 bankruptcy proceedings of the Companies. The Rules of the Appellate Divisions of New York require that retention agreements be set forth in a written Letter of Engagement signed by both the attorney and client. Therefore, please review this letter of engagement and return an executed copy to us as soon as practicable.

Legal services to be rendered. You have asked the Firms to represent the interests of the Companies. With your permission, we will commence chapter 11 cases (the "Chapter 11 Cases") for the Companies and conduct such negotiations and recommend or take such legal action as may be necessary to protect the Companies' interests with respect to the Chapter 11 Cases, including but not limited to, appearing at hearings in the Chapter 11 Cases, and the preparation and filing of petitions, pleadings, transaction, settlement or other documents. Our representation of the Companies at this time does not include any matters other than those discussed above.

There is always the possibility that we may be asked by other persons, present, past or future, to act on their behalf on matters that are not specifically related to our representation of the Companies. You agree that we will be under no disability in providing such representation

notwithstanding the fact that these other clients may have interests adverse to the Companies' interests provided our involvement is unrelated to the subject matter of our retention by you in these Chapter 11 Cases.

Fees/Expenses.     Our fees will be determined primarily upon our hourly rate time charges in effect at the time the applicable services are rendered. The Firms will charge the hourly rate $400.00 per hour. These rates are effective presently and will only be changed after you receive written notification of our intent to do so.

We will also render bills for all out-of-pocket disbursements made by us on your behalf. Typically, these disbursements include photocopying, long distance telephone and cable, messenger and delivery service, filing fees and court costs, process service, transcripts of depositions and travel expense when required. Any extraordinary expenses, such as appraisal, private investigative or accounting services, will only be incurred after mutual discussion between us, and shall be paid directly by you.

Retainer Deposit.     We request a retainer in the amount of $30,000.00 which will be deposited into the Woods attorney IOLTA account and applied against our time charges, including work already begun as well as the filing fee charged by the Court for each case. If, upon completion of the matter, our time charges are less than the unused portion of the retainer, the difference will be refunded. If it appears that our time charges will exceed the retainer, we will either request additional advances from time to time or we will render statements to you periodically, at our option.

If additional litigation is commenced in which a formal appearance by us is required, should you wish to continue our services, we may require an additional retainer in an amount to be mutually agreed on to be applied against our hourly rates then in effect. Any unused portion of a prior retainer will, of course, be credited to such additional retainer.

Withdrawal.  We reserve the right to discontinue our representation, unless our bills are paid in full and on time. Moreover, in the event of our seeking withdrawal for any appropriate cause in any court proceeding, including for breach of this agreement, refusal to cooperate with us, or to follow our advice on a material matter, or any fact or circumstance that would render our continuing representation unlawful or unethical, you hereby consent to our withdrawal, provided that we comply with any applicable rules of court.

Respective responsibilities.  We will provide you with the services you have requested consistent with our ethical responsibilities under the law. In turn, you must promptly notify us of any changes or new facts that materially affect the nature of the services or legal advice we are performing for you. We will need your cooperation in providing us information, and reviewing and approving documents in a timely fashion. We ask that if you are dissatisfied in any way with our services that you let us know promptly.

In connection with preparation of the filing, we will provide you with our standard client information worksheet, and you hereby acknowledge receipt of same.

Please sign this letter and return a copy to us as soon as possible.

We look forward to this opportunity to assist you.

Best regards,

### LAW OFFICES OF GABRIEL DEL VIRGINIA

By: */s/ Gabriel Del Virginia*
    Gabriel Del Virginia

### THE LAW OFFICES OF ADRIENNE WOODS, P.C.

By: */s/ Adrienne Woods*
    Adrienne Woods

**ACCEPTED AND AGREED TO:**
Park Overlook LLC
Dawn Hotel of N.Y., LLC

Date___5/12/2016_____

By: Mr. Gordon H. Duggins
Title: Member

Cc:   G. Sterling Zinsmeyer
      Armando T. Dunn

# **EXHIBIT B**

1

1

2    UNITED STATES BANKRUPTCY COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    Case No. 16-11354-scc

5    - - - - - - - - - - - - - - - - - - - -x

6

7    In the Matter of:

8    PARK OVERLOOK LLC, et al.,

9            Debtors.

10

11   - - - - - - - - - - - - - - - - - - - -x

12

13                United States Bankruptcy Court

14                One Bowling Green

15                New York, New York

16

17                October 5, 2016

18                11:17 AM

19

20

21

22   B E F O R E:

23   HON. SHELLEY C. CHAPMAN

24   U.S. BANKRUPTCY JUDGE

25

2

1

2    Status Conference

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20    Transcribed by:  Elisheva Elbaz

21    eScribers, LLC

22    700 West 192nd Street, Suite #607

23    New York, NY 10040

24    (973)406-2250

25    operations@escribers.net

3

1

2  A P P E A R A N C E S:

3  THE LAW OFFICES OF ADRIENNE WOODS, P.C.

4          Attorneys for Debtor

5          1 Penn Plaza

6          Suite 6153

7          New York, NY 10119

8

9  BY:    ADRIENNE WOODS, ESQ.

10

11

12  LAMONICA, HERBST & MANISCALO LLP

13          Attorneys for Chapter 11 Trustee

14          3305 Jerusalem Avenue

15          Wantagh, NY 11793

16

17  BY:    SALVATORE LAMONICA, ESQ.

18

19

20

21

22

23

24

25

1

2  UNITED STATES DEPARTMENT OF JUSTICE

3       Office of the United States Trustee

4       U.S. Federal Office Building

5       201 Varick Street, Suite 1006

6       New York, NY 10014

7

8  BY:   ANDREW VELEZ-RIVERA, ESQ.

9

10

11  FREJKA PLLC

12       Attorneys for Glenn Zinsmayer

13       205 East 42nd Street

14       20th floor

15       New York, NY 10017

16

17  BY:   ELISE S. FREJKA, ESQ.

18       JASON S. RAPPAPORT, ESQ.

19

20

21

22

23

24

25

**PARK OVERLOOK LLC, et al.**

5

```
 1                       P R O C E E D I N G S

 2              THE COURT:  Hi, how are you?

 3              MR. LAMONICA:  Good.

 4              THE COURT:  We meet again, Mr. LaMonica.

 5              MR. LAMONICA:  Yes, Judge, yes.

 6              THE COURT:  Mr. Velez-Rivera.

 7              MR. VELEZ-RIVERA:  How are you?

 8              THE COURT:  I'm okay.  Thanks for coming in.

 9              MR. LAMONICA:  Good morning, Judge.

10              THE COURT:  So bring me up to speed with respect to

11   what's happening in this case.

12              MR. LAMONICA:  I was appointed on September 13th.

13   I've retained Gary Lampert as my accountant.  The order, if it

14   hasn't hit yet, will be hitting in --

15              THE COURT:  Okay.

16              MR. LAMONICA:  -- or his application will be hitting

17   any minute.

18              THE COURT:  All right.  Signed off by the Office of

19   the U.S. Trustee?

20              MR. LAMONICA:  I believe it's on its way to their

21   office.

22              THE COURT:  Okay.

23              MR. LAMONICA:  But Mr. Lampert has already gotten

24   books and records.  Ms. Woods has been cooperative in providing

25   me with the post-petition books and records.
```

6

| | |
|---|---|
| 1 | THE COURT:  Okay. |
| 2 | MR. LAMONICA:  We've scheduled a meeting for next week |
| 3 | so we could sit down and talk about the pre-petition books and |
| 4 | records.  I have obtained a turn-over of the collections for |
| 5 | the month of August.  I've received -- |
| 6 | THE COURT:  So were -- the premises were vacated? |
| 7 | MR. LAMONICA:  Under the stipulations that were signed |
| 8 | on, I think, August 28th, 29th -- |
| 9 | THE COURT:  Right. |
| 10 | MR. LAMONICA:  -- the debtors surrendered possession |
| 11 | to the landlords. |
| 12 | THE COURT:  Right. |
| 13 | MR. LAMONICA:  And the landlords are now running the |
| 14 | shelters as of August 31st. |
| 15 | THE COURT:  Is the City on notice? |
| 16 | MR. LAMONICA:  I believe so. |
| 17 | THE COURT:  I mean, this is beyond my scope other than |
| 18 | it's not beyond my scope of concern about the individuals who |
| 19 | are living there.  Because a homeless shelter, it strikes me, |
| 20 | is subject to significant regulation and oversight by the City. |
| 21 | MR. LAMONICA:  From my point of view, when I was -- |
| 22 | THE COURT:  Do you -- yeah? |
| 23 | MR. LAMONICA:  -- when I was -- as of the day I was |
| 24 | appointed, there were no longer any operating shelters that the |
| 25 | debtors had.  As of August 31st they had surrendered both |

**PARK OVERLOOK LLC, et al.**

7

1  entities, surrendered possession and operations to the

2  landlords; and the landlords were operating them as of now.

3         MR. VELEZ-RIVERA:  My understanding, Your Honor, is

4  slightly different.  I do recall about a month ago a document

5  crossing my desk indicating that an independent operator had

6  assumed the Park Overlook facilities and was at the tail end of

7  getting authorization from the City.

8         I'm led to believe, also, Your Honor, obtaining a

9  license to operate a homeless shelter in New York City is

10  actually kind of a simple thing, because the -- I know --

11  because the demand is so high and the supply is so low.  The

12  system is essentially bifurcated, from what I understand.

13  There's a fast track, and then there's a slow track.

14         THE COURT:  I see.

15         MR. VELEZ-RIVERA:  And the City reimburses the

16  facilities at different rates depending on the type of license

17  that they have.

18         THE COURT:  Okay.  All right.  So then someone else is

19  worrying about that; and Mr. LaMonica, you're worrying about

20  what happened --

21         MR. LAMONICA:  I'm worried about collecting --

22         THE COURT:  -- the pre-petition transfers occurred?

23         MR. LAMONICA:  Pre -petition and post-petition

24  transfers, we're looking into.  I'm worried about collecting

25  the receivables, because as of August 31st, the City was

 1 | billed, and I have collected approximately 250,000 dollars in

 2 | the two estates, 92- in one and 160- in another.

 3 | THE COURT:  Okay.

 4 | MR. LAMONICA:  And I'm holding that.  I've obtained

 5 | the turnover of the balance of the funds that were in the DIP

 6 | accounts for both debtors; I have those in my possession.

 7 | At this point in time, the only thing left is to do a

 8 | forensic analysis to see where any transfers happened, if any.

 9 | THE COURT:  Well, my recollection from, I think the

10 | first-day hearing, was that there had been a substantial

11 | transfer; and the explanation for it had something to do with,

12 | there was said to be some peril of some third party taking

13 | funds.  It's only the vaguest recollection.  Other than that,

14 | it struck me as being a little bit unusual.

15 | MS. WOODS:  Yes, Your Honor.  What had initially

16 | happened was some of the daily sweep lenders, so TBT and

17 | Yellowstone (ph.), were still attempting to take money out

18 | prior to the DIP accounts being opened.  My clients, without

19 | consulting me, freaked out a little bit and moved all the money

20 | into --

21 | THE COURT:  Yes.

22 | MS. WOODS:  -- a company that they own, along with

23 | Sterling Zinsmayer (ph.) or Glenn Zinsmayer (ph.).  And

24 | apparently they had been using that account to make payments to

25 | third parties.

**PARK OVERLOOK LLC, et al.**

9

1           So one of the things that we've been doing, I've

2   advised my clients that in addition to working with me, I'm now

3   representing Mr. Duggins (ph.) and Mr. Dunn (ph.).  One of the

4   things I advised them to do was hire a forensic accountant so

5   that they can --

6           THE COURT:  Well --

7           MS. WOODS:  -- trace the funds.

8           THE COURT:  -- but hold on.

9           MS. WOODS:  Um-hum.

10          THE COURT:  Because to the extent that we have a clear

11  map, if you will --

12          MS. WOODS:  Right.

13          THE COURT:  -- that the debtors' funds --

14          MS. WOODS:  Um-hum.

15          THE COURT:  -- were moved into that account --

16          MS. WOODS:  Right.

17          THE COURT:  -- okay, then Mr. LaMonica needs to call

18  the shots --

19          MS. WOODS:  Um-hum.

20          THE COURT:  -- on that account, including

21  understanding everything about it and frankly freezing it.

22          MS WOODS:  Right.

23          THE COURT:  So --

24          MR. LAMONICA:  Was that a pre-petition transfer or a

25  post-petition transfer?

**PARK OVERLOOK LLC, et al.**

10

1          THE COURT:  Pre.

2          MS. WOODS:  Both.

3          THE COURT:  Both.

4          MR. LAMONICA:  Oh.

5          MS. WOODS:  Yes.

6          THE COURT:  So there was -- my recollection was it was

7     in the range of 400,000 dollars.

8          MS. WOODS:  Yes, Your Honor; it's a significant amount

9     of money.

10         THE COURT:  Right.  So that money, Mr. LaMonica, needs

11    to -- it needs to be identified, frozen, and not touched.

12         MS. WOODS:  Um-hum.

13         THE COURT:  And access to it by anybody, in my view,

14    but Mr. LaMonica, is not authorized.

15         MS. WOODS:  Yes, Your Honor.

16         THE COURT:  So I'm not suggesting that you are doing

17    anything at all improper.

18         MS. WOODS:  Right.

19         THE COURT:  But I don't know what Mr. LaMonica knows.

20    So I'm just very concerned that we have absolute communication

21    here.

22         MS. WOODS:  Right, absolutely.  And Your Honor, just

23    to clarify; my clients are paying for the forensic accountant,

24    obviously, out of their own pockets, because I've explained to

25    them that some of the monies that they moved are going to have

1 | to be returned one way or another.

2 |         THE COURT:  Well, but that's where --

3 |         MS. WOODS:  So that's --

4 |         THE COURT:  -- that's -- go ahead.

5 |         MR. LAMONICA:  The only concern I have is if your

6 | client wants to pay for an accountant, that's fine.

7 |         THE COURT:  Right.

8 |         MR. LAMONICA:  The books and records belong to me, and

9 | I want possession of them, the original books and records.

10 |         MS. WOODS:  Sure, absolutely.

11 |         MR. LAMONICA:  They belong to my estate.  So I --

12 |         MS. WOODS:  Right.

13 |         MR. LAMONICA:  -- I prefer that they be in my

14 | possession.  And then if your accountants want to come and look

15 | at them, I'll give them access.

16 |         MS WOODS:  It's electronic.  So we're preparing to

17 | give you access to everything online, because everything is --

18 | anything that's physical is located in North Carolina, because

19 | that's the center of operations for all of the various shelters

20 | that they run, because they have several others.  So we can

21 | definitely provide you with anything physical, give you access

22 | to the electronic in tandem with your investigation.  My

23 | clients are also looking into the transfers.

24 |         THE COURT:  Well, we're -- on my own motion, I am

25 | ordering that all records be preserved that have anything to do

**PARK OVERLOOK LLC, et al.**

12

```
 1    with the debtor that's before me.

 2              MS. WOODS:  Yes, Your Honor.

 3              THE COURT.  All right?  So please make that clear to

 4    your clients.

 5              MS. WOODS:  Absolutely.

 6              THE COURT:  So Mr. LaMonica, do you have any sense of

 7    who the pre-petition creditors are?

 8              MR. LAMONICA:  The schedules list creditors but

 9    everyone is disputed.  So what I plan on doing, Your Honor, is

10    that I don't see -- and I've discussed this with Mr. Velez-

11    Rivera -- that I don't see a reason for this case to stay in

12    Chapter 11.  What I'd like to do is bring a motion before Your

13    Honor to convert it to a 7 and then do bar dates, so we get a

14    better idea of who the creditor body is.  I mean to do a bar

15    date now and then ultimately convert --

16              THE COURT:  As long as - as long as you're -- as long

17    as it stays here, so that we have supervision and oversight of

18    your repatriating the funds that were transferred.

19              MR. LAMONICA:  Absolutely.

20              THE COURT:  And --

21              MR. LAMONICA:  I don't think that's a problem.

22              THE COURT:  And whether or not the banks or the

23    parties who were sweeping inappropriately were the recipients

24    of preferential transfers, I mean, I don't have to tell you how

25    to spot the issues.
```

**PARK OVERLOOK LLC, et al.**

13

| | |
|---|---|
| 1 | MR. LAMONICA:  I certainly know how to handle that, |
| 2 | Your Honor.  Certainly I can handle it. |
| 3 | THE COURT:  So -- |
| 4 | MR. LAMONICA:  The only other issue that is of any |
| 5 | time concern is the stipulations that were so ordered provided |
| 6 | for payments to be made to the landlords or to the entities |
| 7 | under the stipulation.  And one of them was made, I think, |
| 8 | before I was appointed, I'm not sure about that.  Because I |
| 9 | haven't gotten -- |
| 10 | THE COURT:  One of them was made before you were |
| 11 | appointed; and when I received it and I had questions, the |
| 12 | explanation that came back was that part of the deal was that a |
| 13 | trustee be appointed.  Correct? |
| 14 | MS. WOODS:  That's correct, Your Honor. |
| 15 | MR. LAMONICA:  That's correct.  So that 35,000-dollar |
| 16 | payment was made.  Whether I think it's a good deal or a bad |
| 17 | deal, I guess, doesn't really matter at this point in time, |
| 18 | because it's consummated and it's done and so ordered.  The |
| 19 | time to appeal has passed. |
| 20 | THE COURT:  Okay. |
| 21 | MR. LAMONICA:  There's another payment that's due, I |
| 22 | think, by October 9th, which I'm going to communicate with the |
| 23 | other side, see if I can get an extension of that deadline, and |
| 24 | see if that's in the best interests of the estate.  I'm still |
| 25 | not a hundred percent sure that that is in the best interests |

**PARK OVERLOOK LLC, et al.**

14

1    of the estate.  And if it is, then we'll make that payment --

2                THE COURT:  Okay.

3                MR. LAMONICA:  -- from the funds I've collected.  I've

4    only received the funds last Thursday, so this was just

5    deposited into my estate account.  They probably just cleared

6    today.

7                THE COURT:  Okay.  All right.

8                MR. LAMONICA:  Is that account that the company -- can

9    I ask --

10               THE COURT:  Sure.

11               MR. LAMONICA:  -- her a question?

12               Is that company that you mentioned, the Adalex (ph.)

13   account?

14               MS. WOODS:  Um-hum.

15               MR. LAMONICA:  Okay.

16               MS. WOODS:  Yes.

17               MR. LAMONICA:  All right.  So that's the entity we

18   knew about already so --

19               THE COURT:  Okay.  All right.

20               MR. LAMONICA:  Your Honor, the only other question I

21   have for the Court is would Your Honor consider a --

22               THE COURT:  So do you want to -- do you want to make a

23   motion to convert right now?

24               MR. LAMONICA:  Yeah. I was going to ask Your Honor if

25   everyone's here, if there's any objection to it, why waste the

PARK OVERLOOK LLC, et al.

15

 1   paper or the time?  But that's certainly up to Your Honor.

 2              THE COURT:  I'm a big fan of efficiency.  I'm also a

 3   big fan of due process.

 4              MR. LAMONICA:  Should I do a notice of presentment?

 5   Does that help?  Or --

 6              THE COURT:  Mr. Velez-Rivera?

 7              MR. RAPPAPORT:  Jason Rappaport, counsel for Glenn

 8   Zinsmayer.  We agree to convert the case.

 9              MR. VELEZ-RIVERA:  We certainly have no objection,

10   Your Honor.  It's crossed our minds a thousand times.

11              THE COURT:  All right.  Well, it seems as if there's

12   no downside and potentially some upside to converting.  So on

13   your oral motion, and there appearing to be good cause, Mr.

14   LaMonica, I'll convert the case to Chapter 7, frankly, on the

15   assumption that Mr. Velez-Rivera's office will find a way to

16   appoint Mr. LaMonica as a Chapter 7 trustee.

17              MR. VELEZ-RIVERA:  I'll recommend that.

18              THE COURT:  Okay.

19              MR. LAMONICA:  Thank you, Your Honor.  I'll submit

20   that order to Your Honor.  I'll show it to Mr. Velez-Rivera --

21              THE COURT:  Okay.

22              MR. LAMONICA:  -- before I do that --

23              THE COURT:  All right.

24              MR. LAMONICA:  -- and Mr. Rappaport and Ms. Woods.

25              THE COURT:  Well, in light -- again, I always ask a

**PARK OVERLOOK LLC, et al.**

16

```
 1    lot of questions because I like to know what's going on.

 2    Please don't infer anything, that I'm raising any suspicions.

 3    I'm just simply trying to facilitate there being transparency

 4    and communication among the parties.

 5            MR. LAMONICA:  No worries in that regard, Your Honor.

 6            THE COURT:  Okay, all right, so go ahead.

 7            MR. LAMONICA:  Oh, yes.  There was also on Your

 8    Honor's calendar a motion for debtor-in-possession financing.

 9    In light of my appointment, I will withdraw that motion --

10            THE COURT:  Right.

11            MR. LAMONICA:  -- and I'll submit an order or a

12    letter.  It doesn't matter?

13            THE COURT:  Ask everyone who tells me what to do.

14            MR. LAMONICA:  Okay.  Okay.

15            THE COURT:  Now, the companion debtor case, remind me,

16    what's the status of the companion case?

17            MS. WOODS:  Your Honor, both Dawn and Park, as the

18    Court knows, entered into agreements with the respective

19    landlords, and the agreements provided that they would vacate

20    the premises and pay a small portion of what was due post-

21    petition in exchange for a waiver of all pre-petition and some

22    post-petition obligations.  So they are out of --

23            THE COURT:  So is Mr. LaMonica the trustee of Dawn as

24    well?

25            MR. LAMONICA:  Yes.
```

**PARK OVERLOOK LLC, et al.**

| | |
|---|---|
| 1 | MS. WOODS:  Yes. |
| 2 | MR. LAMONICA:  Of both. |
| 3 | THE COURT:  You are.  Okay, all right.  So we're all |
| 4 | here together.  So had I entered -- I had entered a joint |
| 5 | administration order? |
| 6 | MR. LAMONICA:  Yes. |
| 7 | MS. WOODS:  You had, Your Honor.  Yes. |
| 8 | THE COURT:  Okay.  So then the Chapter 7 conversion |
| 9 | will apply equally to the other debtor. |
| 10 | MR. LAMONICA:  Yes, that's correct, Your Honor. |
| 11 | MR. VELEZ-RIVERA:  Yes. |
| 12 | THE COURT:  Okay. |
| 13 | MR. VELEZ-RIVERA:  That's correct. |
| 14 | MR. LAMONICA:  I guess the only other matter, Your |
| 15 | Honor, that hasn't been addressed, is Ms. Woods and the |
| 16 | accountants for the debtor had sent me a fee application for |
| 17 | their retention as Chapter 11 counsel and accountants or |
| 18 | financial advisors to the debtors.  I don't know what her plans |
| 19 | are or what their plans are in terms of putting them on before |
| 20 | Your Honor, but I would recommend that they may be premature at |
| 21 | this time, given that we have no idea what the distribution is |
| 22 | going to be like as to Chapter 11 administrative creditors. |
| 23 | THE COURT:  Chapter 7 now. |
| 24 | MR. LAMONICA:  Now. |
| 25 | THE COURT:  Well, I got you.  Right. |

**PARK OVERLOOK LLC, et al.**

18

```
 1              MR. LAMONICA:  There would still be a second tier.
 2    But I guess we could deal with that --
 3              THE COURT:  I would suggest you talk to one another.
 4              MR. LAMONICA:  Yes.
 5              THE COURT:  So, okay.
 6              MR. LAMONICA:  That's all the pending matters right
 7    now, Your Honor.
 8              THE COURT:  Okay.  So we'll wait to hear from you if
 9    you need -- if you need anything more.  Otherwise, we'll keep
10    our eye out for a bar date motion.
11              MR. LAMONICA:  Terrific.
12              THE COURT:  Okay.  Thank you very much --
13              MR. LAMONICA:  Thank you, Your Honor.
14              THE COURT:  -- for coming in.  Thank you.  Have a
15    pleasant day.
16         (Whereupon these proceedings were concluded at 11:31 AM)
17
18
19
20
21
22
23
24
25
```

19

1

2                                I N D E X

3    RULINGS:                                       PAGE   LINE

4    All debtors records are to be                    11     24

5    preserved.

6    Case is converted to Chapter 7                   15     12

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

20

C E R T I F I C A T I O N

I, Elisheva Elbaz, certify that the foregoing transcript is a
true and accurate record of the proceedings.

_____

Elisheva Elbaz

eScribers

700 West 192nd Street, Suite #607

New York, NY 10040

Date:  November 9, 2016

—

**—— (2)**
12:16;18:9

**A**

**absolute (1)**
10:20
**absolutely (4)**
10:22;11:10;12:5,
19
**access (4)**
10:13;11:15,17,21
**account (6)**
8:24;9:15,20;14:5,
8,13
**accountant (4)**
5:13;9:4;10:23;
11:6
**accountants (3)**
11:14;17:16,17
**accounts (2)**
8:6,18
**actually (1)**
7:10
**Adalex (1)**
14:12
**addition (1)**
9:2
**addressed (1)**
17:15
**administration (1)**
17:5
**administrative (1)**
17:22
**advised (2)**
9:2,4
**advisors (1)**
17:18
**again (2)**
5:4;15:25
**ago (1)**
7:4
**agree (1)**
15:8
**agreements (2)**
16:18,19
**ahead (2)**
11:4;16:6
**along (1)**
8:22
**always (1)**
15:25
**among (1)**
16:4
**amount (1)**
10:8
**analysis (1)**
8:8
**ANDREW (1)**
4:8

**apparently (1)**
8:24
**appeal (1)**
13:19
**appearing (1)**
15:13
**application (2)**
5:16;17:16
**apply (1)**
17:9
**appoint (1)**
15:16
**appointed (5)**
5:12;6:24;13:8,11,
13
**appointment (1)**
16:9
**approximately (1)**
8:1
**assumed (1)**
7:6
**assumption (1)**
15:15
**attempting (1)**
8:17
**Attorneys (1)**
4:12
**August (5)**
6:5,8,14,25;7:25
**authorization (1)**
7:7
**authorized (1)**
10:14

**B**

**back (1)**
13:12
**bad (1)**
13:16
**balance (1)**
8:5
**banks (1)**
12:22
**bar (3)**
12:13,14;18:10
**belong (2)**
11:8,11
**best (2)**
13:24,25
**better (1)**
12:14
**beyond (2)**
6:17,18
**bifurcated (1)**
7:12
**big (2)**
15:2,3
**billed (1)**
8:1
**bit (2)**
8:14,19
**body (1)**

**12:14**
**books (5)**
5:24,25;6:3;11:8,9
**both (6)**
6:25;8:6;10:2,3;
16:17;17:2
**bring (2)**
5:10;12:12
**Building (1)**
4:4

**C**

**calendar (1)**
16:8
**call (1)**
9:17
**came (1)**
13:12
**can (5)**
9:5;11:20;13:2,23;
14:8
**Carolina (1)**
11:18
**case (6)**
5:11;12:11;15:8,
14;16:15,16
**cause (1)**
15:13
**center (1)**
11:19
**certainly (4)**
13:1,2;15:1,9
**Chapter (7)**
12:12;15:14,16;
17:8,17,22,23
**City (6)**
6:15,20;7:7,9,15,25
**clarify (1)**
10:23
**clear (2)**
9:10;12:3
**cleared (1)**
14:5
**client (1)**
11:6
**clients (5)**
8:18;9:2;10:23;
11:23;12:4
**collected (2)**
8:1;14:3
**collecting (2)**
7:21,24
**collections (1)**
6:4
**coming (2)**
5:8;18:14
**communicate (1)**
13:22
**communication (2)**
10:20;16:4
**companion (2)**
16:15,16

**company (3)**
8:22;14:8,12
**concern (3)**
6:18;11:5;13:5
**concerned (1)**
10:20
**concluded (1)**
18:16
**consider (1)**
14:21
**consulting (1)**
8:19
**consummated (1)**
13:18
**conversion (1)**
17:8
**convert (5)**
12:13,15;14:23;
15:8,14
**converting (1)**
15:12
**cooperative (1)**
5:24
**counsel (2)**
15:7;17:17
**COURT (77)**
5:2,4,6,8,10,15,18,
22;6:1,6,9,12,15,17,
22;7:14,18,22;8:3,9,
21;9:6,8,10,13,15,17,
20,23;10:1,3,6,10,13,
16,19;11:2,4,7,24;
12:3,6,16,20,22;13:3,
10,20;14:2,7,10,19,
21,22;15:2,6,11,18,
21,23,25;16:6,10,13,
15,18,23;17:3,8,12,
23,25;18:3,5,8,12,14
**creditor (1)**
12:14
**creditors (3)**
12:7,8;17:22
**crossed (1)**
15:10
**crossing (1)**
7:5

**D**

**daily (1)**
8:16
**date (2)**
12:15;18:10
**dates (1)**
12:13
**Dawn (1)**
16:17,23
**day (2)**
6:23;18:15
**deadline (1)**
13:23
**deal (4)**
13:12,16,17;18:2

**debtor (4)**
12:1;16:15;17:9,16
**debtor-in-possession (1)**
16:8
**debtors (4)**
6:10,25;8:6;17:18
**debtors' (1)**
9:13
**definitely (1)**
11:21
**demand (1)**
7:11
**DEPARTMENT (1)**
4:2
**depending (1)**
7:16
**deposited (1)**
14:5
**desk (1)**
7:5
**different (2)**
7:4,16
**DIP (2)**
8:5,18
**discussed (1)**
12:10
**disputed (1)**
12:9
**distribution (1)**
17:21
**document (1)**
7:4
**dollars (2)**
8:1;10:7
**done (1)**
13:18
**down (1)**
6:3
**downside (1)**
15:12
**due (3)**
13:21;15:3;16:20
**Duggins (1)**
9:3
**Dunn (1)**
9:3

**E**

**East (1)**
4:13
**efficiency (1)**
15:2
**electronic (2)**
11:16,22
**ELISE (1)**
4:17
**else (1)**
7:18
**end (1)**
7:6
**entered (3)**
16:18;17:4,4

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

**entities (2)**
7:1;13:6
**entity (1)**
14:17
**equally (1)**
17:9
**ESQ (3)**
4:8,17,18
**essentially (1)**
7:12
**estate (4)**
11:11;13:24;14:1,5
**estates (1)**
8:2
**everyone (2)**
12:9;16:13
**everyone's (1)**
14:25
**exchange (1)**
16:21
**explained (1)**
10:24
**explanation (2)**
8:11;13:12
**extension (1)**
13:23
**extent (1)**
9:10
**eye (1)**
18:10

**F**

**facilitate (1)**
16:3
**facilities (2)**
7:6,16
**fan (2)**
15:2,3
**fast (1)**
7:13
**Federal (1)**
4:4
**fee (1)**
17:16
**financial (1)**
17:18
**financing (1)**
16:8
**find (1)**
15:15
**fine (1)**
11:6
**first-day (1)**
8:10
**floor (1)**
4:14
**forensic (3)**
8:8;9:4;10:23
**frankly (2)**
9:21;15:14
**freaked (1)**
8:19

**freezing (1)**
9:21
**FREJKA (2)**
4:11,17
**frozen (1)**
10:11
**funds (7)**
8:5,13;9:7,13;
12:18;14:3,4

**G**

**Gary (1)**
5:13
**given (1)**
17:21
**Glenn (3)**
4:12;8:23;15:7
**Good (4)**
5:3;9;13:16;15:13
**guess (3)**
13:17;17:14;18:2

**H**

**handle (2)**
13:1,2
**happened (3)**
7:20;8:8,16
**happening (1)**
5:11
**hear (1)**
18:8
**hearing (1)**
8:10
**help (1)**
15:5
**Hi (1)**
5:2
**high (1)**
7:11
**hire (1)**
9:4
**hit (1)**
5:14
**hitting (2)**
5:14,16
**hold (1)**
9:8
**holding (1)**
8:4
**homeless (2)**
6:19;7:9
**Honor (26)**
7:3,8;8:15;10:8,15,
22;12:2,9,13;13:2,14;
14:20,21,24;15:1,10,
19,20;16:5,17;17:7,
10,15,20;18:7,13
**Honor's (1)**
16:8
**hundred (1)**
13:25

**I**

**idea (2)**
12:14;17:21
**identified (1)**
10:11
**improper (1)**
10:17
**inappropriately (1)**
12:23
**including (1)**
9:20
**independent (1)**
7:5
**indicating (1)**
7:5
**individuals (1)**
6:18
**infer (1)**
16:2
**initially (1)**
8:15
**interests (2)**
13:24,25
**into (6)**
7:24;8:20;9:15;
11:23;14:5;16:18
**investigation (1)**
11:22
**issue (1)**
13:4
**issues (1)**
12:25

**J**

**JASON (2)**
4:18;15:7
**joint (1)**
17:4
**Judge (2)**
5:5,9
**JUSTICE (1)**
4:2

**K**

**keep (1)**
18:9
**kind (1)**
7:10
**knew (1)**
14:18
**knows (2)**
10:19;16:18

**L**

**LAMONICA (66)**
5:3,4,5,9,12,16,20,
23;6:2,7,10,13,16,21,
23;7:19,21,23;8:4;

9:17,24;10:4,10,14,
19;11:5,8,11,13;12:6,
8,19,21;13:1,4,15,21;
14:3,8,11,15,17,20,
24;16:5,7,11,14,23,
25;17:2,6,10,14,24;
18:1,4,6,11,13
**Lampert (2)**
5:13,23
**landlords (6)**
6:11,13;7:2,2;13:6;
16:19
**last (1)**
14:4
**led (1)**
7:8
**left (1)**
8:7
**lenders (1)**
8:16
**letter (1)**
16:12
**license (2)**
7:9,16
**light (2)**
15:25;16:9
**list (1)**
12:8
**little (2)**
8:14,19
**living (1)**
6:19
**located (1)**
11:18
**long (3)**
12:16,16,16
**longer (1)**
6:24
**look (1)**
11:14
**looking (2)**
7:24;11:23
**lot (1)**
16:1
**low (1)**
7:11

**M**

**map (1)**
9:11
**matter (3)**
13:17;16:12;17:14
**matters (1)**
18:6
**may (1)**
17:20
**mean (3)**
6:17;12:14,24
**meet (1)**
5:4
**meeting (1)**

6:2
**mentioned (1)**
14:12
**minds (1)**
15:10
**minute (1)**
5:17
**money (2)**
8:17,19;10:9,10
**monies (1)**
10:25
**month (2)**
6:5;7:4
**more (1)**
18:9
**morning (1)**
5:9
**motion (7)**
11:24;12:12;14:23;
15:13;16:8,9;18:10
**moved (1)**
8:19;9:15;10:25
**much (1)**
18:12

**N**

**need (2)**
18:9,9
**needs (3)**
9:17;10:10,11
**New (3)**
4:6,15;7:9
**next (1)**
6:2
**North (1)**
11:18
**notice (2)**
6:15;15:4
**NY (2)**
4:6,15

**O**

**objection (2)**
14:25;15:9
**obligations (1)**
16:22
**obtained (2)**
6:4;8:4
**obtaining (1)**
7:8
**obviously (1)**
10:24
**occurred (1)**
7:22
**October (1)**
13:22
**off (1)**
5:18
**Office (5)**
4:3,4;5:18,21;
15:15

one (7)
  8:2;9:1,3;11:1;
  13:7,10;18:3
online (1)
  11:17
only (7)
  8:7,13;11:5;13:4;
  14:4,20;17:14
opened (1)
  8:18
operate (1)
  7:9
operating (2)
  6:24;7:2
operations (2)
  7:1;11:19
operator (1)
  7:5
oral (1)
  15:13
order (4)
  5:13;15:20;16:11;
  17:5
ordered (2)
  13:5,18
ordering (1)
  11:25
original (1)
  11:9
others (1)
  11:20
Otherwise (1)
  18:9
out (5)
  8:17,19;10:24;
  16:22;18:10
Overlook (1)
  7:6
oversight (2)
  6:20;12:17
own (3)
  8:22;10:24;11:24

**P**

paper (1)
  15:1
Park (2)
  7:6;16:17
part (1)
  13:12
parties (3)
  8:25;12:23;16:4
party (1)
  8:12
passed (1)
  13:19
pay (2)
  11:6;16:20
paying (1)
  10:23
payment (3)
  13:16,21;14:1

payments (2)
  8:24;13:6
pending (1)
  18:6
percent (1)
  13:25
peril (1)
  8:12
petition (1)
  16:21

**—**

–petition (1)
  7:23

**P**

ph (6)
  8:17,23,23;9:3,3;
  14:12
physical (2)
  11:18,21
plan (1)
  12:9
plans (2)
  17:18,19
pleasant (1)
  18:15
please (2)
  12:3;16:2
PLLC (1)
  4:11
pockets (1)
  10:24
point (3)
  6:21;8:7;13:17
portion (1)
  16:20
possession (5)
  6:10;7:1;8:6;11:9,
  14
post- (1)
  16:20
post-petition (4)
  5:25;7:23;9:25;
  16:22
potentially (1)
  15:12
Pre (2)
  7:23;10:1
prefer (1)
  11:13
preferential (1)
  12:24
premature (1)
  17:20
premises (2)
  6:6;16:20
preparing (1)
  11:16
pre-petition (5)
  6:3;7:22;9:24;

12:7;16:21
presentment (1)
  15:4
preserved (1)
  11:25
prior (1)
  8:18
probably (1)
  14:5
problem (1)
  12:21
proceedings (1)
  18:16
process (1)
  15:3
provide (1)
  11:21
provided (2)
  13:5;16:19
providing (1)
  5:24
putting (1)
  17:19

**R**

raising (1)
  16:2
range (1)
  10:7
RAPPAPORT (4)
  4:18;15:7,7,24
rates (1)
  7:16
really (1)
  13:17
reason (1)
  12:11
recall (1)
  7:4
receivables (1)
  7:25
received (3)
  6:5;13:11;14:4
recipients (1)
  12:23
recollection (3)
  8:9,13;10:6
recommend (2)
  15:17;17:20
records (6)
  5:24,25;6:4;11:8,9,
  25
regard (1)
  16:5
regulation (1)
  6:20
reimburses (1)
  7:15
remind (1)
  16:15
repatriating (1)
  12:18

representing (1)
  9:3
respect (1)
  5:10
respective (1)
  16:18
retained (1)
  5:13
retention (1)
  17:17
returned (1)
  11:1
right (24)
  5:18;6:9,12;7:18;
  9:12,16,22;10:10,18,
  22;11:7,12;12:3;
  14:7,17,19,23;15:11,
  23;16:6,10;17:3,25;
  18:6
Rivera (1)
  12:11
run (1)
  11:20
running (1)
  6:13

**S**

scheduled (1)
  6:2
schedules (1)
  12:8
scope (2)
  6:17,18
second (1)
  18:1
seems (1)
  15:11
sense (1)
  12:6
sent (1)
  17:16
September (1)
  5:12
several (1)
  11:20
shelter (2)
  6:19;7:9
shelters (3)
  6:14,24;11:19
shots (1)
  9:18
show (1)
  15:20
side (1)
  13:23
Signed (2)
  5:18;6:7
significant (2)
  6:20;10:8
simple (1)
  7:10
simply (1)

16:3
sit (1)
  6:3
slightly (1)
  7:4
slow (1)
  7:13
small (1)
  16:20
someone (1)
  7:18
speed (1)
  5:10
spot (1)
  12:25
STATES (2)
  4:2,3
status (1)
  16:16
stay (1)
  12:11
stays (1)
  12:17
Sterling (1)
  8:23
still (3)
  8:17;13:24;18:1
stipulation (1)
  13:7
stipulations (2)
  6:7;13:5
Street (2)
  4:5,13
strikes (1)
  6:19
struck (1)
  8:14
subject (1)
  6:20
submit (2)
  15:19;16:11
substantial (1)
  8:10
suggest (1)
  18:3
suggesting (1)
  10:16
Suite (1)
  4:5
supervision (1)
  12:17
supply (1)
  7:11
Sure (4)
  11:10;13:8,25;
  14:10
surrendered (3)
  6:10,25;7:1
suspicions (1)
  16:2
sweep (1)
  8:16
sweeping (1)

12:23
**system (1)**
7:12

**T**

**tail (1)**
7:6
**talk (2)**
6:3;18:3
**tandem (1)**
11:22
**TBT (1)**
8:16
**tells (1)**
16:13
**terms (1)**
17:19
**Terrific (1)**
18:11
**Thanks (1)**
5:8
**third (2)**
8:12,25
**thousand (1)**
15:10
**Thursday (1)**
14:4
**tier (1)**
18:1
**times (1)**
15:10
**today (1)**
14:6
**together (1)**
17:4
**touched (1)**
10:11
**trace (1)**
9:7
**track (2)**
7:13,13
**transfer (3)**
8:11;9:24,25
**transferred (1)**
12:18
**transfers (5)**
7:22,24;8:8;11:23;
12:24
**transparency (1)**
16:3
**Trustee (5)**
4:3;5:19;13:13;
15:16;16:23
**trying (1)**
16:3
**turnover (1)**
8:5
**turn-over (1)**
6:4
**two (1)**
8:2
**type (1)**

7:16

**U**

**ultimately (1)**
12:15
**Um-hum (5)**
9:9,14,19;10:12;
14:14
**Under (2)**
6:7;13:7
**UNITED (2)**
4:2,3
**unusual (1)**
8:14
**up (2)**
5:10;15:1
**upside (1)**
15:12
**using (1)**
8:24

**V**

**vacate (1)**
16:19
**vacated (1)**
6:6
**vaguest (1)**
8:13
**Varick (1)**
4:5
**various (1)**
11:19
**Velez- (1)**
12:10
**VELEZ-RIVERA (11)**
4:8;5:6,7;7:3,15;
15:6,9,17,20;17:11,
13
**Velez-Rivera's (1)**
15:15
**view (2)**
6:21;10:13

**W**

**wait (1)**
18:8
**waiver (1)**
16:21
**wants (1)**
11:6
**waste (1)**
14:25
**way (3)**
5:20;11:1;15:15
**week (1)**
6:2
**what's (3)**
5:11;16:1,16
**Whereupon (1)**
18:16

**withdraw (1)**
16:9
**without (1)**
8:18
**Woods (31)**
5:24;8:15,22;9:7,9,
12,14,16,19,22;10:2,
5,8,12,15,18,22;11:3,
10,12,16;12:2,5;
13:14;14:14,16;
15:24;16:17;17:1,7,
15
**working (1)**
9:2
**worried (2)**
7:21,24
**worries (1)**
16:5
**worrying (2)**
7:19,19

**Y**

**Yellowstone (1)**
8:17
**York (3)**
4:6,15;7:9

**Z**

**Zinsmayer (4)**
4:12;8:23,23;15:8

**1**

**10014 (1)**
4:6
**10017 (1)**
4:15
**1006 (1)**
4:5
**11 (3)**
12:12;17:17,22
**11:31 (1)**
18:16
**13th (1)**
5:12
**160- (1)**
8:2

**2**

**201 (1)**
4:5
**205 (1)**
4:13
**20th (1)**
4:14
**250,000 (1)**
8:1
**28th (1)**
6:8
**29th (1)**

6:8

**3**

**31st (3)**
6:14,25;7:25
**35,000-dollar (1)**
13:15

**4**

**400,000 (1)**
10:7
**42nd (1)**
4:13

**7**

**7 (5)**
12:13;15:14,16;
17:8,23

**9**

**92- (1)**
8:2
**9th (1)**
13:22

# **EXHIBIT C**

## COMPARISON OF TIME BILLED

| | DAWN | | | | | PARK OVERLOOK | | | |
|---|---|---|---|---|---|---|---|---|---|
| **DATE** | **ACTIVITY** | **QTY** | **RATE** | **AMT** | **DATE** | **ACTIVITY** | **QTY** | **RATE** | **AMT** |
| 5/12/16 | Case Administration:  Conference calls to discuss and review documents and review petition | 2.5 | $400 | $1,000 | 5/12/16 | Case Administration:  Conference calls to discuss and review documents and review petition | 2.5 | $400 | $1,000 |
| 5/12/16 | Case Administration:  revisions to and filing of petition, updates to clients and conference calls regarding same. | 1.1 | $400 | $440 | 5/12/16 | Case Administration:  revisions to and filing of petition, updates to clients and conference calls regarding same. | 1.1 | $400 | $440 |
| 5/15/16 | Case Administration:  Update clients regarding insurance requirements, request documentation. | 0.2 | $400 | $80 | 5/15/16 | Case Administration:  Update clients regarding insurance requirements, request documentation. | 0.2 | $400 | $80 |
| 5/16/16 | Case Administration:  Conferences with G. Duggins, A. Dunn and Wells Fargo bankruptcy department regarding  bank account status. | 0.4 | $400 | $160 | 5/16/16 | Case Administration:  Conferences with G. Duggins, A. Dunn and Wells Fargo bankruptcy department regarding  bank account status. | 0.4 | $400 | $160 |
| 5/16/16 | Case Administration:  Draft motions, notices and proposed order extending deadlines to file | 0.9 | $400 | $360 | 5/16/16 | Case Administration:  Draft motions, notices and proposed order extending deadlines to file | 0.9 | $400 | $360 |
| 5/17/16 | Business Operations: Conference call with G. Duggins, A. Dunn and S. Zinsmeyer regarding DHS activities at Dawn Hotel | 0.1 | $400 | $40 | 5/17/16 | Business Operations: Conference call with G. Duggins, A. Dunn and S. Zinsmeyer regarding DHS activities at Dawn Hotel | 0.1 | $400 | $40 |
| 5/17/16 | Case Administration:  Email update on next steps to S. Duggins, A. Dunn and S. Zinsmeyer. Regarding completing schedules and petition, insurance information and related matters. | 0.3 | $400 | $120 | 5/17/16 | Case Administration:  Email update on next steps to S. Duggins, A. Dunn and S. Zinsmeyer. Regarding completing schedules and petition, insurance information and related matters. | 0.3 | $400 | $120 |
| 5/17/16 | Case Administration:  Research small business designation criteria. | 0.2 | $400 | $80 | 5/17/16 | Case Administration:  Research small business designation criteria. | 0.2 | $400 | $80 |
| 5/19/16 | Case Administration: Review schedules and coordinate filing. | 0.3 | $400 | $120 | 5/19/16 | Case Administration: Review schedules and coordinate filing. | 0.3 | $400 | $120 |
| 5/19/16 | Case Administration: Conference with G. Duggins and A. Dunn regarding lender relations. | 0.2 | $400 | $80 | 5/19/16 | Case Administration: Conference with G. Duggins and A. Dunn regarding lender relations. | 0.2 | $400 | $80 |
| 5/19/16 | Case Administration: Update, file and service motion to extend time to file schedules and lists on notice of presentment. | 0.2 | $400 | $80 | 5/19/16 | Case Administration: Update, file and service motion to extend time to file schedules and lists on notice of presentment. | 0.2 | $400 | $80 |
| 5/20/16 | Business Operations: Conference with G. Duggins, S. Zinsmeyer and A. Dunn regarding payments issues on rent, utilities, payroll, and daily loans. | 0.5 | $400 | $200 | 5/20/16 | Business Operations: Conference with G. Duggins, S. Zinsmeyer and A. Dunn regarding payments issues on rent, utilities, payroll, and daily loans. | 0.5 | $400 | $200 |
| 5/22/16 | Case Administration: Conference with G. Duggins, S. Zinsmeyer and A. Dunn regarding outstanding issues. | 0.4 | $400 | $160 | 5/22/16 | Case Administration: Conference with G. Duggins, S. Zinsmeyer and A. Dunn regarding outstanding issues. | 0.4 | $400 | $160 |
| 5/23/16 | Case Administration: Review updated petition, follow up on further revisions to creditor list. | 0.2 | $400 | $80 | 5/23/16 | Case Administration: Review updated petition, follow up on further revisions to creditor list. | 0.2 | $400 | $80 |
| 5/23/16 | Business Operations: Conference with I. Aguilar (TVT) regarding bankruptcy, plan going forward, use of cash collateral, status of security interest and timing issues. | 0.2 | $400 | $80 | 5/23/16 | Business Operations: Conference with I. Aguilar (TVT) regarding bankruptcy, plan going forward, use of cash collateral, status of security interest and timing issues. | 0.2 | $400 | $80 |
| 5/24/16 | Business Operations: Calls to bankruptcy unit at ConEdison, follow up email to same and request additional information from client. | 0.5 | $400 | $200 | 5/24/16 | Business Operations: Calls to bankruptcy unit at ConEdison, follow up email to same and request additional information from client. | 0.5 | $400 | $200 |
| 5/26/16 | Case Administration: Conference with G. Duggins and A. Dunn regarding obligations under loans, completing schedules and related issues. | 0.2 | $400 | $80 | 5/26/16 | Case Administration: Conference with G. Duggins and A. Dunn regarding obligations under loans, completing schedules and related issues. | 0.2 | $400 | $80 |
| 5/27/16 | Case Administration: Review emails on status of various aspects of case from clients, brief update call on same with C. Marshall. | 0.4 | $400 | $160 | 5/27/16 | Case Administration: Review emails on status of various aspects of case from clients, brief update call on same with C. Marshall. | 0.4 | $400 | $160 |
| 5/27/16 | Case Administration: Conference with G. Duggins and A. Dunn regarding case status. | 0.3 | $400 | $120 | 5/27/16 | Case Administration: Conference with G. Duggins and A. Dunn regarding case status. | 0.3 | $400 | $120 |

## COMPARISON OF TIME BILLED

| | DAWN | | | | | PARK OVERLOOK | | | |
|---|---|---|---|---|---|---|---|---|---|
| DATE | ACTIVITY | QTY | RATE | AMT | DATE | ACTIVITY | QTY | RATE | AMT |
| 6/1/16 | Business Operations: Conferences with R. Baum (Jaffa) and G. Duggins regarding outstanding invoices; attention to email regarding same. | 0.4 | $400 | $160 | 6/1/16 | Business Operations: Conferences with R. Baum (Jaffa) and G. Duggins regarding outstanding invoices; attention to email regarding same. | 0.4 | $400 | $160 |
| 6/2/16 | Business Operations: Conference with bankruptcy department at ConEdison regarding proposed adequate protection payments. | 0.3 | $400 | $120 | 6/2/16 | Business Operations: Conference with bankruptcy department at ConEdison regarding proposed adequate protection payments. | 0.3 | $400 | $120 |
| 6/2/16 | Case Administration: Conference with A. Zwerman at Wagner & Zwerman regarding past due obligations and potential ongoing work as DIP accountant. | 0.2 | $400 | $80 | 6/2/16 | Case Administration: Conference with A. Zwerman at Wagner & Zwerman regarding past due obligations and potential ongoing work as DIP accountant. | 0.2 | $400 | $80 |
| 6/2/16 | Case Administration: Conference with L. Irwin regarding work as DIP accountant, and update calls with C. Marshall regarding same. | 0.4 | $400 | $160 | 6/2/16 | Case Administration: Conference with L. Irwin regarding work as DIP accountant, and update calls with C. Marshall regarding same. | 0.4 | $400 | $160 |
| 6/9/16 | Case Administration: Attention to client emails. | 0.3 | $400 | $120 | 6/9/16 | Case Administration: Attention to client emails regarding case status and schedules. | 0.3 | $400 | $120 |
| 6/9/16 | Case Administration: Conference with L. Patt, A. Dunn and G. Duggins regarding retention of accounting firm. | 0.3 | $400 | $120 | 6/9/16 | Professional Retention: Conference with L. Patt, A. Dunn and G. Duggins regarding retention of accounting firm. | 0.3 | $400 | $120 |
| 6/13/16 | Case Administration: Conference with L. Patt regarding case status. | 0.2 | $400 | $80 | 6/13/16 | Case Administration: Conference with L. Patt regarding case status. | 0.2 | $400 | $80 |
| 6/13/16 | Case Administration: Review and respond to emails regarding payments issues, documents and information needed from L. Patt, documents and information needed to complete schedules. | 0.3 | $400 | $120 | 6/13/16 | Case Administration: Review and respond to emails regarding payments issues, documents and information needed from L. Patt, documents and information needed to complete schedules. | 0.3 | $400 | $120 |
| 6/13/16 | Case Administration: Conference with C. Marshall regarding income and assets statements, review taxes, add to petition document bank | 0.4 | $400 | $160 | 6/13/16 | Case Administration: Conference with C. Marshall regarding income and assets statements, review taxes, add to petition document bank | 0.4 | $400 | $160 |
| 6/17/16 | Case Administration: Review and revise schedules | 0.5 | $400 | $200 | 6/17/16 | Case Administration: Review and revise schedules | 0.5 | $400 | $200 |
| 6/17/16 | Business Operations: Conferences with V. Serebro and G. Duggins and A. Dunn regarding the status of Yellowstone security interest. | 0.3 | $400 | $120 | 6/17/16 | Business Operations: Conferences with V. Serebro and G. Duggins and A. Dunn regarding the status of Yellowstone security interest. | 0.3 | $400 | $120 |
| 6/17/16 | Business Operations: Review and respond to emails regarding various  payments to be made by Debtor from postpetition accounts. | 0.3 | $400 | $120 | 6/17/16 | Business Operations: Review and respond to emails regarding various  payments to be made by Debtor from postpetition accounts. | 0.3 | $400 | $120 |
| 6/17/16 | Case Administration: UCC search, discussions with W. Cheung regarding results, discuss with clients. | 0.3 | $400 | $120 | 6/17/16 | Case Administration: UCC search, discussions with W. Cheung regarding results, discuss with clients. | 0.3 | $400 | $120 |
| 6/18/16 | Case Administration: Conference with L. Patt regarding schedules, additional information needed, revisions. | 0.6 | $400 | $240 | 6/18/16 | Case Administration: Conference with L. Patt regarding schedules, additional information needed, revisions. | 0.6 | $400 | $240 |
| 6/23/16 | Case Administration: Review updated schedules, provide comments and submit for additional edits. | 1 | $400 | $400 | 6/23/16 | Case Administration: Review updated schedules, provide comments and submit for additional edits. | 1 | $400 | $400 |
| 6/23/16 | Case Administration: Begin drafting Rule 1007 statement. | 1.2 | $400 | $480 | 6/23/16 | Case Administration: Begin drafting Rule 1007 statement. | 1.2 | $400 | $480 |
| 6/24/16 | Case Administration: Continue review and updates to schedules accompanying petition. | 2.8 | $400 | $1,120 | 6/24/16 | Case Administration: Continue review and updates to schedules accompanying petition. | 2.8 | $400 | $1,120 |
| 6/24/16 | Case Administration: Conferences with L. Patt regarding updates to schedules. | 0.6 | $400 | $240 | 6/24/16 | Case Administration: Conferences with L. Patt regarding updates to schedules. | 0.6 | $400 | $240 |
| 6/24/16 | Case Administration: Conferences with G. Duggins regarding updates to schedules. | 0.2 | $400 | $80 | 6/24/16 | Case Administration: Conferences with G. Duggins regarding updates to schedules. | 0.2 | $400 | $80 |

## COMPARISON OF TIME BILLED

| | DAWN | | | | | PARK OVERLOOK | | | |
|---|---|---|---|---|---|---|---|---|---|
| DATE | ACTIVITY | QTY | RATE | AMT | DATE | ACTIVITY | QTY | RATE | AMT |
| 6/24/16 | Case Administration: Conference with UST (0.1) and emails regarding insurance, DIP accounts and taxes with C. Marshall, UT, G. Duggins and A. Zwerman. | 0.4 | $400 | $160 | 6/24/16 | Case Administration: Conference with UST (0.1) and emails regarding insurance, DIP accounts and taxes with C. Marshall, UT, G. Duggins and A. Zwerman. | 0.4 | $400 | $160 |
| 6/24/16 | Case Administration: Continue drafting Rule 1007-2 statement and schedules required under Rule. | 0.9 | $400 | $360 | 6/24/16 | Case Administration: Continue drafting Rule 1007-2 statement and schedules required under Rule. | 0.9 | $400 | $360 |
| 6/25/16 | Case Administration: Conference with L. Patt regarding additional revisions to schedules and SOFA; discussion on revisions to 1007 statement. | 0.5 | $400 | $200 | 6/25/16 | Case Administration: Conference with L. Patt regarding additional revisions to schedules and SOFA; discussion on revisions to 1007 statement. | 0.5 | $400 | $200 |
| 6/26/16 | Case Administration: Conference with L. Patt regarding finalizing documents. | 0.2 | $400 | $80 | 6/26/16 | Case Administration: Conference with L. Patt regarding finalizing documents. | 0.2 | $400 | $80 |
| 6/26/16 | Professional Retention:  Review Vernon Consulting retention application, declaration, proposed order and exhibits. | 0.3 | $400 | $120 | 6/26/16 | Professional Retention:  Review Vernon Consulting retention application, declaration, proposed order and exhibits. | 0.3 | $400 | $120 |
| 6/27/16 | Case Administration: Preparation for and appear with clients at initial debtor interview and 341 meeting. | 3.4 | $400 | $1,360 | 6/27/16 | Case Administration: Preparation for and appear with clients at initial debtor interview and 341 meeting. | 3.4 | $400 | $1,360 |
| 6/27/16 | Case Administration: Conference with S. Zinsmeyer case status, IDI and 341 Meeting | 0.2 | $400 | $80 | 6/27/16 | Case Administration: Conference with S. Zinsmeyer case status, IDI and 341 Meeting. | 0.2 | $400 | $80 |
| 6/29/16 | Case Administration: Conference with L. Patt regarding 341 Meeting, IDI, additional information requested and timing of budget. | 0.2 | $400 | $80 | 6/29/16 | Case Administration: Conference with L. Patt regarding 341 Meeting, IDI, additional information requested and timing of budget. | 0.2 | $400 | $80 |
| 6/29/16 | Case Administration: Follow up with G. Duggins and A. Dunn regarding status of outstanding information to complete schedules and executed the documents. | 0.1 | $400 | $40 | 6/29/16 | Case Administration: Follow up with G. Duggins and A. Dunn regarding status of outstanding information to complete schedules and executed the documents. | 0.1 | $400 | $40 |
| 6/30/16 | Case Administration: Draft motion for joint administration and consolidated mailing matrix with proposed order. | 0.6 | $400 | $240 | 6/30/16 | Case Administration: Draft motion for joint administration and consolidated mailing matrix with proposed order. | 0.6 | $400 | $240 |
| 6/30/16 | Professional Retention: Draft motion to retain Woods Firm with declaration and proposed order. | 0.4 | $400 | $160 | 6/30/16 | Professional Retention: Draft motion to retain Woods Firm with declaration and proposed order. | 0.4 | $400 | $160 |
| 7/1/16 | Business Operations: Review utilities agreements and provide to client; respond to ConEdison requesting set time to cure defaults. | 0.4 | $400 | $160 | 7/1/16 | Business Operations: Review utilities agreements and provide to client; respond to ConEdison requesting set time to cure defaults. | 0.4 | $400 | $160 |
| 7/5/16 | Litigation: Conference with G. Duggins, S. Zinsmeyer and LL/T counsel. | 0.4 | $400 | $160 | 7/5/16 | Litigation: Conference with G. Duggins, S. Zinsmeyer and LL/T counsel. | 0.4 | $400 | $160 |
| 7/12/16 | Litigation: Conferences with G. Duggins, M. Pensabence regarding lease issues. | 0.3 | $400 | $120 | 7/12/16 | Litigation: Conferences with G. Duggins, M. Pensabence regarding lease issues. | 0.3 | $400 | $120 |
| 7/19/16 | Case Administration: Research and draft motion to  extend stay to principals. | 2.4 | $400 | $960 | 7/19/16 | Case Administration: Research and draft motion to  extend stay to principals. | 2.4 | $400 | $960 |
| 7/19/16 | Case Administration: Revise motion for joint administration, retention applications for A. Woods and Vernon Consulting and resubmit to UST. | 1.1 | $400 | $440 | 7/19/16 | Case Administration: Revise motion for joint administration, retention applications for A. Woods and Vernon Consulting and resubmit to UST. | 1.1 | $400 | $440 |
| 7/20/16 | Financing: Draft DIP financing motion. | 1.4 | $400 | $560 | 7/20/16 | Financing: Draft DIP financing motion. | 1.4 | $400 | $560 |
| 7/21/16 | Case Administration: Call to confirm documents are approving for filing with G. Duggins, final revisions based on additional information, and file and serve DIP Financing Motion, Woods Retention, Motion t o Extend Automatic Stay and Joint Administration Motion. | 1.4 | $400 | $560 | 7/21/16 | Case Administration: Call to confirm documents are approving for filing with G. Duggins, final revisions based on additional information, and file and serve DIP Financing Motion, Woods Retention, Motion t o Extend Automatic Stay and Joint Administration Motion. | | | |
| 7/25/16 | Case Administration: Call with G. Duggins, A. Dunn, S. Zinsmeyer and L. Patt (in part) regarding case strategy | 0.5 | $400 | $200 | 7/25/16 | Case Administration: Call with G. Duggins, A. Dunn, S. Zinsmeyer and L. Patt (in part) regarding case strategy | 0.5 | $400 | $200 |

## COMPARISON OF TIME BILLED

| | DAWN | | | | | PARK OVERLOOK | | | |
|---|---|---|---|---|---|---|---|---|---|
| **DATE** | **ACTIVITY** | **QTY** | **RATE** | **AMT** | **DATE** | **ACTIVITY** | **QTY** | **RATE** | **AMT** |
| 7/25/16 | Professional Retention: Review engagement letter and draft email to M. Pensabene regarding real estate/lease issue. | 0.2 | $400 | $80 | 7/25/16 | Professional Retention: Review engagement letter and draft email to M. Pensabene regarding real estate/lease issue. | 0.2 | $400 | $80 |
| 8/3/16 | Case Administration: Conference with L. Platt regarding debtors' financials. | 0.3 | $400 | $120 | 8/3/16 | Case Administration: Conference with L. Platt regarding debtors' financials. | 0.3 | $400 | $120 |
| 8/3/16 | Litigation: Attention to client emails regarding case status and schedules, state court litigations for hotels. | 0.2 | $400 | $80 | 8/3/16 | Litigation: Attention to client emails regarding case status and schedules, state court litigations for hotels. | 0.2 | $400 | $80 |
| 8/8/16 | Case Administration: Conference with L. Patt regarding MOR status. | 0.3 | $400 | $120 | 8/8/16 | Case Administration: Conference with L. Patt regarding MOR status. | 0.3 | $400 | $120 |
| 8/9/16 | Case Administration: Meeting with L. Patt to review and discuss MORs for May and June and Budgets. | 1 | $400 | $400 | 8/9/16 | Case Administration: Meeting with L. Patt to review and discuss MORs for May and June and Budgets. | 1 | $400 | $400 |
| 8/9/16 | Case Administration: Conferences with G. Duggins, A. Dunn, C. Marshall and L. Patt regarding additional clarification needed on MORs. | 0.3 | $400 | $120 | 8/9/16 | Case Administration: Conferences with G. Duggins, A. Dunn, C. Marshall and L. Patt regarding additional clarification needed on MORs. | 0.3 | $400 | $120 |
| 8/10/16 | Case Administration: Hearing preparation with L. Patt. | 0.4 | $400 | $160 | 8/10/16 | Case Administration: Hearing preparation with L. Patt. | 0.4 | $400 | $160 |
| 8/10/16 | Case Administration: Update conference with S. Zinsmeyer | 0.2 | $400 | $80 | 8/10/16 | Case Administration: Update conference with S. Zinsmeyer | 0.2 | $400 | $80 |
| 8/10/16 | Case Administration: Preparation for hearing on various motions. | 1.2 | $400 | $480 | 8/10/16 | Case Administration: Preparation for hearing on various motions. | 1.2 | $400 | $480 |
| 8/11/16 | Case Administration: Travel to and from and represent client at ICC and hearing on motions for DIP Financing, extension of stay, retention applications and joint administration. | 2.5 | $400 | $1,000 | 8/11/16 | Case Administration: Travel to and from and represent client at ICC and hearing on motions for DIP Financing, extension of stay, retention applications and joint administration. | 2.5 | $400 | $1,000 |
| 8/17/16 | Case Administration: Prepare bar date application, order and notice, submit to trustee for approval, submit to chambers for entry. | 0.9 | $400 | $360 | 8/17/16 | Case Administration: Prepare bar date application, order and notice, submit to trustee for approval, submit to chambers for entry. | 0.9 | $400 | $360 |
| 8/19/16 | Case Administration: Coordinate service of Bar Date Order and Notice | 0.2 | $400 | $80 | 8/19/16 | Case Administration: Coordinate service of Bar Date Order and Notice | 0.2 | $400 | $80 |
| 8/24/16 | Case Administration: Conference with E. Frejka regarding possible estate causes of action and case conversion. | 0.5 | $400 | $200 | 8/24/16 | Case Administration: Conference with E. Frejka regarding possible estate causes of action and case conversion. | 0.5 | $400 | $200 |
| 8/25/16 | Case Administration: Conferences with G. Duggins regarding allegations of G. Zinsmeyer in Affidavit filed opposing Dawn settlement. | 0.6 | $400 | $240 | 8/25/16 | RFS Proceeding: Conferences with G. Duggins regarding allegations of G. Zinsmeyer in Affidavit filed opposing Dawn settlement. | 0.6 | $400 | $240 |
| 8/25/16 | Case Administration: Conferences with L. Patt regarding case status update. | 0.3 | $400 | $120 | 8/25/16 | Case Administration: Conferences with L. Patt regarding case status update. | 0.3 | $400 | $120 |
| 8/26/16 | Plan and Disclosure Statement Conferences with L. Platt regarding plan numbers. | 0.7 | $400 | $280 | 8/26/16 | Plan and Disclosure Statement Conferences with L. Platt regarding plan numbers. | 0.7 | $400 | $280 |
| 8/26/16 | Case Administration: Conference with A. Velez-Rivera regarding appointment of trustee/conversion issues. | 0.1 | $400 | $40 | 8/26/16 | Case Administration: Conference with A. Velez-Rivera regarding appointment of trustee/conversion issues. | 0.1 | $400 | $40 |
| 8/26/16 | Case Administration: Conference with E. Frejka regarding case status | 0.3 | $400 | $120 | 8/26/16 | Case Administration: Conference with E. Frejka regarding case status | 0.3 | $400 | $120 |
| 8/26/16 | Case Administration: Conference with L. Patt regarding case status. | 0.3 | $400 | $120 | 8/26/16 | Case Administration: Conference with L. Patt regarding case status. | 0.3 | $400 | $120 |
| 8/26/16 | Case Administration: Conference with G. Duggins regarding case status. | 0.2 | $400 | $80 | 8/26/16 | Case Administration: Conference with G. Duggins regarding case status. | 0.2 | $400 | $80 |
| 8/29/16 | Case Administration: Conference with E. Frejka regarding case status. | 0.1 | $400 | $40 | 8/29/16 | Case Administration: Conference with E. Frejka regarding case status. | 0.1 | $400 | $40 |

**DAWN ONLY**

| DATE | ACTIVITY | QTY | RATE | AMT |
|------|----------|-----|------|-----|
| 5/23/16 | Litigation: Conference with L. Wolf and followup regarding pending landlord tenant proceeding in Bronx. | 0.4 | 400 | 160 |
| 6/23/16 | RFS Proceedings: Review motions for relief from stay filed by Park Landlord, case research, update clients. | 2.3 | 400 | 920 |
| 7/2/16 | Business Operations: Conference with G. Duggins regarding status of rent at Dawn, strategy regarding property. | 0.3 | 400 | 120 |
| 7/25/16 | Litigation: Conference with M. Pensabene and G. Duggins regarding potential Park litigation. | 0.3 | 400 | 120 |
| 8/3/16 | Business Operations: Conference with G. Duggins regarding Park and goal for building | 0.3 | 400 | 120 |
| 8/3/16 | Case Administration: Conference with M. Pensabene regarding Park Overlook LL/T case. | 0.5 | 400 | 200 |
| 8/3/16 | RFS Proceedings: Conference with G. Luckman regarding LL position on Park | 0.2 | 400 | 80 |
| 8/4/16 | RSF Proceedings: Follow up conference with G. Luckman regarding LL position on Park | 0.1 | 400 | 40 |
| 8/4/16 | Litigation: Conference with M. Pensabene regarding LL position on Park and strategy discussion. | 0.2 | 400 | 80 |
| 8/5/16 | Case Administration: Conference with L. Patt regarding status of MORs and outstanding information and issues for Park; email to G. Duggins, S. Zinsmeyer and L. Patt regarding resolutions of same (0.1). | 0.7 | 400 | 280 |
| 8/6/16 | Case Administration: Conference with G. Duggins regrding outstanding issues on MOR | 0.1 | 400 | 40 |
| 8/6/16 | Case Administration: Conference with G. Duggins, A. Dunn, S. Zinsmeyer, L. Patt and M. Verona regarding MORs for Park. | 0.8 | 400 | 320 |
| 8/10/16 | Case Administration: Review and file final Park MOR for May and June | 0.3 | 400 | 120 |
| 8/10/16 | Case Administration: Review proposed 13-week budget for Park. | 0.4 | 400 | 160 |
| 8/16/16 | RFS Proceeding: Conference call with G. Duggins regrding possible Park settlement options. | 0.3 | 400 | 120 |
| 8/16/16 | Business Operations: Email to creditor regarding automtaic stay extension to G. Duggins | 0.1 | 400 | 40 |

## DAWN ONLY

| DATE | ACTIVITY | QTY | RATE | AMT |
|---|---|---|---|---|
| 8/17/16 | Case Administration: Conference call with L. Irwin regarding information needed from financials for conference call on Park | 0.5 | 400 | 200 |
| 8/17/16 | RFS Proceedings: Review financials, conference call with L. Patt, settlement discussions with G. Duggins and A. Dunn, extend settlement offer to Park landlord. | 0.9 | 400 | 360 |
| 8/18/16 | RFS Proceeding: Conference with G. Duggins and S. Zinsmeyer regarding Park settlement. | 0.3 | 400 | 120 |
| 8/18/16 | RFS Proceeding: Conference call with G. Luckman regarding Park settlement. | 0.1 | 400 | 40 |
| 8/21/16 | RFS Proceeding: Draft Park settlement motion and stipulation and order | 1.3 | 400 | 520 |
| 8/22/16 | Business Operations: Review creditor invoice, respond to inquiry (Jaffe) | 0.2 | 400 | 80 |
| 8/6/216 | Case Administration: Pre and post client conference calls with L. Patt in preparation for MOR resolution call on Park. | 0.5 | 400 | 200 |

## PARK OVERLOOK ONLY

| DATE | ACTIVITY | QTY | RATE | AMT |
|---|---|---|---|---|
| 5/24/15 | Case Administration: Review email from Yellowstone, draft letter advising Yellowstone counsel of stay violating and update client regarding same. | 0.3 | 400 | 120 |
| 5/19/16 | RFS Proceedings: Conference with J. Chances, litigation counsel to landlord at Dawn, and updated client. | 0.6 | 400 | 240 |
| 5/23/16 | Business Operations Conferences with S. Saffer (Yellowstone) and V. Serebro regarding cash collateral stipulating and return of funds taken from Dawn account post-petition and requested proof of liens (UCCs) and update with clients on same. | 0.4 | 400 | 160 |
| 5/24/16 | Case Administration: Review Dawn chapter 11 checklist and follow up with client on additional information needed. | 1.3 | 400 | 520 |
| 5/26/16 | Case Administration: Conference with Tyree at Lending Club regarding status of bankruptcy and follow up with clients regarding same. | 0.3 | 400 | 120 |
| 6/2/16 | Business Operations: Conferences with C. Cheeti at Chase regarding loan documents and status of guarantors. | 0.4 | 400 | 160 |
| 6/9/16 | Business Operations: Conference with G. Duggins regarding status of Dawn with DHS | 0.3 | 400 | 120 |
| 6/17/16 | Business Operations: Review postpetition transfers to Yellowstone, conference with C. Marshall regarding same and send demand to V. Serebro for return of funds. | 0.4 | 400 | 160 |
| 6/17/16 | Business Operations: Review loan agreement between Chase and Dawn for business line of credit and update clients. | 0.3 | 400 | 120 |
| 6/21/16 | Case Administration: Conference with L. Patt (0.8) and G. Duggins (0.7) regarding schedules, additional information needed, UCC filings. | 0.8 | 400 | 320 |
| 6/23/16 | RFS Proceedings: Review motion for relief from stay filed by Dawn Landlord, case research, update clients. | 2.8 | 400 | 1120 |
| 6/24/16 | Litigation:  Conference with W. Rome regarding Dawn litigation history. | 0.3 | 400 | 120 |
| 7/2/16 | Business Operations: Conference with G. Duggins regarding status of rent at Dawn, strategy regarding property. | 0.3 | 400 | 120 |
| 7/25/16 | Litigation: Conference with M. Pensabene and G. Duggins regarding potential Dawn litigation. | 0.3 | 400 | 120 |
| 7/26/16 | Litigation: Additional discussions with M. Pensabene and, G. Duggins and P. Simpson regarding potential and past Dawn litigation. | 0.3 | 400 | 120 |
| 8/3/16 | Case Administration: Develop strategy for Dawn wind down. | 0.5 | 400 | 200 |

## PARK OVERLOOK ONLY

| DATE | ACTIVITY | QTY | RATE | AMT |
|---|---|---|---|---|
| 8/5/16 | Litigation: Discussion with M. Pensabene regarding Dawn property rights. | 0.5 | 400 | 200 |
| 8/5/16 | Case Administration: Conference with L. Patt regarding status of MORs, and update to G. Duggins, S. Zinsmeyer and L. Patt regarding resolutions of same. | 1.2 | 400 | 480 |
| 8/6/16 | RFS Proceedings: Draft settlement agreement with Dawn landlord; send to landlord's counsel and client for review and comment. | 3.6 | 400 | 1440 |
| 8/6/16 | RFS Proceedings: Settlement conference with N. Ferst and revisions to settlement agreement based on same. | 0.6 | 400 | 240 |
| 8/10/16 | RFS Proceedings: Settlement conference with N. Ferst. | 0.3 | 400 | 120 |
| 8/10/16 | RFS Proceedings: Final review of settlement agreement with Dawn landlord. | 1.3 | 400 | 520 |
| 8/10/16 | Case Administration: Review proposed 13-week budget for Dawn. | 0.4 | 400 | 160 |
| 8/17/16 | RFS Proceedings: Draft notice of presentment, revise settlement, and file and serve proposed order settlement disputes with Dawn landlord. | 1.3 | 400 | 520 |
| 8/18/16 | RFS Proceeding: Conference with N. Ferst regarding Dawn settlement. | 0.3 | 400 | 120 |